RECEIVED
U.S. DISTRICT COURT

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

2007 AUG 20 PM 4:47

NANCY M.
MAYER-WHITTINGTON
CLERK

JAMES C. AKRIDGE                          :

    Plaintiff,                            :

v.                                        :          Case No.: 1:06-cv-00346-RMU
                                                     Judge: Ricardo M. Urbina
GALLAUDET UNIVERISTY                      :

    Defendant.                            :

## DEFENDANT GALLAUDET UNIVERSITY'S
## MOTION FOR SUMMARY JUDGMENT

COMES NOW, Defendant, Gallaudet University (hereinafter "Gallaudet" or "Defendant"), by and through its counsel, Bonner Kiernan Trebach & Crociata, LLP, and pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 7, hereby requests that this Court grant Defendant's Motion for Summary Judgment on both Counts of Plaintiff's discrimination Complaint.

In support of this Motion, Defendant respectfully refers the Court to the attached Memorandum of Points and Authorities and Statement of Material Facts Not in Genuine Dispute, which are incorporated herein by reference.

DATED this 20th day of August 2007.

Respectfully submitted,

BONNER KIERNAN TREBACH & CROCIATA, LLP

_____
Christopher E. Hassell, #291641
Heather S. Deane, #471834
1233 20th Street, NW
Suite 800
Washington, DC 20036
(202) 712-7000

RECEIVED

AUG 2 0 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Motion for Summary Judgment, Memorandum of Points and Authorities in Support of the Motion, and the Statement of Material Facts Not in Genuine Dispute, was served electronically and via first class mail, postage prepaid, this 20th day of August, 2007 upon:

C. Sukari Hardnett, Esquire
HARDNETT & ASSOCIATES
1010 Wayne Avenue, St. 210
Silver Spring, MD  20910

_____
Heather S. Deane

169759-6

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUBMIA

JAMES C. AKRIDGE                     :

     Plaintiff,                     :

v.                                   :         Case No.: 1:06-cv-00346-RMU
                                               Judge: Ricardo M. Urbina
GALLAUDET UNIVERISTY                 :

     Defendant.                     :

## STATEMENT OF MATERIAL FACTS NOT IN GENUINE DISPUTE

Defendant Gallaudet University (hereinafter "Gallaudet") submits the following Statement of Material Facts Not in Genuine Dispute:

1.    This case stems from a Complaint Plaintiff filed in the United States District Court for the District of Columbia alleging he had been discriminated against by his employer, Gallaudet University. (*See generally* Complaint.)

2.    Plaintiff alleges Gallaudet discriminated against him based on his race (African-American), gender (male), and disability (hearing impaired). (*See* Complaint ¶¶ 17-18.)

3.    Plaintiff alleges Gallaudet's discriminatory actions include failing to award him the position of Director of the Career Center to which he applied, delaying his employment advancement, and condoning retaliatory and hostile behavior directed against him after he sought employment advancement. (*See* Complaint ¶¶ 9, 17.)

4.    In pursuit of his claim, Plaintiff first filed a complaint with the D.C. Office of Human Rights (hereinafter "OHR") and the Equal Employment Opportunity Commission (hereinafter "EEOC") on February 6, 2005, EEOC Charge Number 10CA500026, FEPA Charge Number 05-012P (CN) (hereinafter "OHR Complaint"). (*See* Charge of Discrimination, dated February 6, 2005, attached hereto as Exhibit 1.)

5.     Plaintiff's OHR Complaint claims he was not hired for the position of Director of the Career Center by Gallaudet and that the reason he was given for not being selected for said position was that he was "not qualified." (*See id.*)

6.     Plaintiff's OHR Complaint does not allege any claims related hostile work environment. (*See id.*)

7.     OHR investigated Plaintiff's allegations and issued a finding of No Probable Cause on August 18, 2005. (*See* Letter of Determination, attached hereto as Exhibit 2.)

8.     On November 23, 2005, the EEOC adopted the No Probable Cause finding of the OHR, and issued Plaintiff a Dismissal and Notice of Rights letter on that date (hereinafter "right-to-sue letter"). (*See* EEOC Dismissal and Notice of Rights, attached hereto as Exhibit 3.)

9.     On February 27, 2006, Plaintiff commenced the instant action in the United States District Court for the District of Columbia (*See generally* Complaint.)

10.     The Complaint in this action was filed ninety-six (96) days after the EEOC issued its right-to-sue letter. (*See* Complaint and Exhibit 3.)

11.     In his Answers to Interrogatories, Plaintiff initially provided no response to Gallaudet's request for information pertaining to his receipt of the right-to-sue letter.[1] (*See* Plaintiff's Answer to Interrogatory 16, attached hereto as Exhibit 4.)

12.     On May 3, 2007, Plaintiff informally supplemented his Answers to Interrogatories by letter, providing that "the answer to Interrogatory No. 16 is December 2, 2005."[2] (*See* Letter from C. Sukari Hardnett, Esquire, dated May 3, 2007, attached hereto as Exhibit 5.)

---

[1] Plaintiff's Answers to Interrogatories, served on April 8, 2007, have never been executed.
[2] As of the date of this Motion, Plaintiff has not formally served amended or executed Answers to Interrogatories.

169759-6

13.     Contrary to Ms. Hardnett's letter, however, Plaintiff could not recall the date that he received the right-to-sue letter. (*See* Deposition of James Akridge (hereinafter "Plaintiff's Deposition," attached hereto as Exhibit 6, pp. 131:5-132:1, 135:17-136:3 & 160:13-20.)

14.     Gallaudet University's job description for Director of the Career Center stated certain specifications, including "[t]wo years demonstrated competency in a management/supervisory/coordination capacity" and "[e]xperience in program development." (*See* Job Description, attached hereto as Exhibit 7.)

15.     Plaintiff did not have two years of demonstrated experience working in a management, supervisory and coordination capacity over other employees at the university level and had no experience in developing career service programs. (*See* Resume of James Akridge, attached hereto as Exhibit 8.)

16.     As part of the interview and selection process, each candidate for the position of Director of the Career Center was required to make a fifteen minute presentation to a group of faculty and staff about his/her vision plan for the Career Center over the next five years. (*See* Letter from Eileen Matthews to James Akridge, dated April 22, 2004, attached hereto as Exhibit 9.)

17.     Plaintiff's vision plan focused primarily on student attrition and did not adequately address the goals of the Career Center. (*See* Plaintiff's Five Year Vision Plan, attached hereto as Exhibit 10.)

18.     Plaintiff received unfavorable evaluations on his presentation and faired poorly in comparison to the other candidates. (*See* Evaluations of James Akridge's presentation, attached hereto as Exhibit 11; Summary of Evaluations of Career Center Director Candidates, attached hereto as Exhibit 12.)

169759-6

19.    After conducting all of the interviews and evaluating all of the presentations of the candidates, the screening committee ranked the candidates in the order of preference for the position of Director of the Career Center.  Plaintiff was ranked last among all of the candidates. (*See* Staff Requisition Form, attached hereto as Exhibit 13.)

### Gender Discrimination

20.    Plaintiff is male. (*See* Complaint ¶ 8.)

21.    The candidate selected for the position of Career Center Director is male.  (*See* Complaint ¶¶ 15 & 18; Plaintiff's Deposition, p. 23:15-19, Exhibit 6.)

22.    Plaintiff does not assert any facts that support his claim of discrimination based on gender. (*See id.*; Plaintiff's Answer to Interrogatories 14 & 15, Exhibit 4.)

23.    Plaintiff makes no claim that any action was taken against him due to the fact that he is a male. (*See id.*)

24.    Plaintiff withdrew his gender discrimination claim at deposition. (*See* Plaintiff's Deposition, p. 24:14-17, Exhibit 6.)

### Racial Discrimination

25.    In support his claim of racial discrimination, the only facts Plaintiff can point to are his allegations that he has been denied promotion and advancement on previous occasions; that there are very few persons of color who occupy administrative level positions; and that the person who was hired for the position of Director of the Career Center was white.  (*See* Plaintiff's Answer to Interrogatory 14, Exhibit 4; Plaintiff's Deposition, p. 24:18-28:1, Exhibit 6.)

26.     The facts upon which Plaintiff relies in support of his claim for discrimination based on race were previously alleged and adjudicated in Plaintiff's prior lawsuit against Gallaudet University.[3] (*See* Plaintiff's Deposition, p. 28:2-12, Exhibit 6.)

27.     Plaintiff makes no claim that any action was taken against him due to the fact that he is African American. (*See* Plaintiff's Answer to Interrogatory 14, Exhibit 4.)

### Discrimination Based on Disability

28.     Plaintiff's claims of discrimination due to disability are based on his hearing impairment. (*See* Complaint ¶ 25.)

29.     The only facts that Plaintiff can point to regarding being discriminated against due to a disability are his allegations that there are very few persons with hearing impairments who occupy administrative level positions, that the person who was hired for the position of Director of the Career Center was not hearing impaired. (*See* Plaintiff's Answer to Interrogatory 14, Exhibit 4; Plaintiff's Deposition, pp. 35:19- 36:6, Exhibit 6.)

30.     Defendant Gallaudet University is the world's only university in which all programs and services are specifically designed to accommodate the deaf and hard of hearing. (*See* Exhibit 2.)

31.     The screening committee that interviewed candidates for the position of Director of the Career Center was made up of four Gallaudet University employees: two deaf and two hearing; one black and three white; two male and two female. (*See* Affidavits of Screening

---

[3] Plaintiff's previous lawsuit, styled *James C. Akridge v. Gallaudet University*, Civil Action No 02-2058 (RBW), was disposed of by Court Order of February 19, 2004, granting Defendant's motion for summary judgment and dismissing Plaintiff's Complaint with prejudice.

169759-6

Committee members Edgar Palmer, Deborah Moore and Karen Cooke, attached hereto as Exhibits 14, 15 & 16[4].)

32.    Plaintiff was one of the thirteen candidates the committee interviewed for the position of Director of the Career Center. (*See id.*)

33.    Of the thirteen candidates the committee interviewed for the position of Director of the Career Center, seven were deaf and six were hearing; two were African American, one was Nigerian, and ten were white; ten were male and three were female. (*See id.*)

34.    After interviewing thirteen candidates for the position of Director of the Career Center, the committee discussed each of the candidates and came to the conclusion that Steve Koppi was the best candidate for the job. (*See id.*)

35.    Mr. Koppi was hired because of his solid career planning experience in a higher education setting, extensive management and budgeting experience, education, and excellent communication and conflict resolution skills. (*See id.*)

36.    The committee unanimously chose not to hire Plaintiff because he did not demonstrate any knowledge or skills related to career development in a higher education setting, and his performance in his interview reflected his inexperience in the field. (*See id.*)

37.    The decision not to hire Plaintiff was not based on his race, gender, or disability. (*See id.*)

DATED: August 20, 2007.

---

[4] Defendant will supplement this Motion to provide screening committee member Terry Coye's signed affidavit, as Mr. Coye was out of town for an extended period of time and unable to review his Affidavit before this motion was filed.

169759-6

Respectfully submitted,

BONNER KIERNAN TREBACH & CROCIATA, LLP

_____

Christopher E. Hassell, #291641
Heather S. Deane, #471834
1233 20th Street, NW
Suite 800
Washington, DC  20036
(202) 712-7000
(202) 712-7100 (fax)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUBMIA

JAMES C. AKRIDGE                              :

      Plaintiff,                       :

v.                                           :     **Case No.: 1:06-cv-00346-RMU**
                                    **Judge: Ricardo M. Urbina**
GALLAUDET UNIVERISTY                          :

      Defendant.                       :

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
## DEFENDANT GALLAUDET UNIVERSITY'S MOTION FOR SUMMARY JUDGMENT

COMES NOW, the Defendant, Gallaudet University (hereinafter "Gallaudet" or "Defendant"), by and through counsel, Bonner, Kiernan, Trebach & Crociata, LLP, and in support of its Motion for Summary Judgment states the following:

## I.    FACTUAL AND PROCEDURAL BACKGROUND

The instant lawsuit arises out of Plaintiff's claims of discrimination against Gallaudet based on Gallaudet's decision not to select him for the position of the Director of the Career Center. (*See* Complaint & Exhibit 1.) Plaintiff filed a charge against Gallaudet with the District of Columbia Office of Human Rights ("OHR") and the U.S. Equal Employment Opportunity Commission ("EEOC") on February 6, 2005, alleging discrimination on the basis of gender, race, and disability.[1] (*See* Exhibit 1.) Plaintiff's OHR Complaint does not allege or even refer to any claims related to hostile work environment. (*See id.*) After conducting an investigation into Plaintiff's allegations, the OHR issued a finding of No Probable Cause on August 18, 2005. (*See* Exhibit 2.) Thereafter, on November 23, 2005, the EEOC adopted the No Probable Cause

---

[1] Plaintiff's OHR Charge refers to retaliation in the first paragraph stated under, "The Particulars Are." (*See* Exhibit 1). However, OHR Charge includes a check mark only in the boxes marked "Race," "Sex," and "Disability," with no check mark in the box marked "Retaliation" or "Other."

finding of the OHR and issued Plaintiff a Dismissal and Notice of Rights letter on that date (hereinafter "right-to-sue letter"). (*See* Exhibit 3.)

Ninety-six (96) days after the EEOC issued the right-to-sue letter, Plaintiff filed a two-Count Complaint in United States District Court for the District of Columbia on February 27, 2006, alleging *inter alia*, discrimination by Gallaudet on the basis of race, gender, and disability under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2 (Count I), and the Americans with Disabilities Act (ADA) of 1990, 29 U.S.C. § 12101 *et. seq.* (Count II). (*See generally* Complaint.) Plaintiff alleges that Gallaudet's discriminatory actions include failing to award him the position of Director of the Career Center, delaying his employment advancement, and condoning retaliatory and hostile behavior directed against him after he sought employment advancement. (*See* Complaint ¶¶ 9-10, 15, 17-22 & 27-31.)

The factual background of this case is garnered from Plaintiff's Complaint, Plaintiff's answers to interrogatories, Plaintiff's document production, Plaintiff's deposition testimony, and Defendant's own documents. Plaintiff's Response to Defendant's Request for Production of Documents consisted primarily of documents produced in Plaintiff's prior discrimination lawsuit against Gallaudet, most of which are irrelevant to the case at bar.[2]  Plaintiff has provided no factual support or documentation in support of his claims of racial, gender and disability discrimination against Gallaudet with regard to his application for the position of Director of the Career Center.[3]  As such, Plaintiff's discrimination claims are without merit and Defendant's motion for summary judgment must be granted.

---

[2] Plaintiff's previous lawsuit, styled *James C. Akridge v. Gallaudet University*, Civil Action No 02-2058 (RBW), was disposed of by Court Order of February 19, 2004, granting Defendant's motion for summary judgment and dismissing Plaintiff's Complaint with prejudice.

[3] At his deposition on July 5, 2007, Plaintiff withdrew his claim for discrimination claim based gender. (*See* Plaintiff's Deposition, p. 24:14-17, Exhibit 6.)

169759-6

## II.    STANDARD OF REVIEW

Under Rule 56 of the Federal Rules of Civil Procedure, a motion for summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 91 L. Ed. 2d 202, 211 (1986).  A dispute over a material fact is genuine when, upon review of the evidence, a reasonable jury could find for the nonmovant. *Id.*  Thus, "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*  A complete failure of proof on an essential element of the nonmovant's case renders all other facts immaterial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

To survive a motion for summary judgment, the nonmovant must make a "sufficient showing to establish the existence of an element essential to that party's case." *Id.* at 322.  More specifically, to survive an adverse Rule 56 motion, the nonmoving party must have established a prima facie case. *Harding v. Gray,* 9 F.3d 150, 154 (D.C. Cir. 1993).  The plaintiff in an employment discrimination case "is not relieved of her obligation to support her allegations by competent evidence showing that there is a genuine issue for trial." *Remedios Jose v. Hosp. for Sick Children,* 130 F.Supp.2d 38, 41 (D.D.C.2000).  In addition, while a nonmovant is not required to produce evidence in a form that would be admissible at trial, the evidence must be capable of being converted into admissible evidence. *Gleken v. Democratic Congressional Campaign Committee, Inc.*, 199 F.3d 1365, 1369 (D.C. Cir. 2000).  Otherwise, the objective of summary judgment would be undermined. *Id.*

169759-6

## III.   ANALYSIS

Defendant asserts that summary judgment is appropriate in this case because:

(1)     Plaintiff did not commence this lawsuit in a timely manner;

(2)     Plaintiff did not file a claim for hostile work environment at the administrative level and has not alleged any hostile conduct by Gallaudet as a matter of law;

(3)     Plaintiff has not demonstrated that Defendant's asserted legitimate, nondiscriminatory and noretaliatory justifications were pretextual; and

(4)     Plaintiff has failed to allege any facts in support of his claim that Gallaudet retaliated against him in not hiring him for the position of the Director of the Center Director because of Plaintiff's participation in protected activity.

For these reasons, summary judgment is appropriate on all counts.

### A.   <u>Plaintiff Did Not Commence This Lawsuit in a Timely Manner.</u>

The procedural requirements set forth in 42 U.S.C. § 2000e-5 apply not only to actions brought pursuant to Title VII, but also those brought pursuant to the ADA. *Simpkins v. Washington Metropolitan Area Transit Authority*, 2 F. Supp. 2d 52, 54 n. 2 (D.D.C. 1998). Accordingly, Plaintiff's claims under both 42 U.S.C. § 2000e-2 and 29 U.S.C. § 12101 should be dismissed because Plaintiff did not timely file suit within ninety (90) days after receipt of the EEOC's right-to-sue letter. *See* 42 U.S.C. §§ 2000e-5(f)(1), 12117(a). As demonstrated above, the EEOC issued the right-to-sue letter on November 23, 2005. (*See* Exhibit 3.) Plaintiff filed this action on February 27, 2006, ninety-six (96) days later. (*See* Complaint.) Thus, even assuming three days for mailing of the right-to-sue letter under Federal Rule of Civil Procedure

6(e), Plaintiff did not timely file his Complaint. *See Baldwin County Welcome Ctr. V. Brown*, 466 U.S. 147, 148 n. 1 (1984) (per curiam) (applying "3-day rule" of Fed.R.Civ.P. 6(e) to Title VII cases where the date on which plaintiff received right-to-sue letter not stated in the record); *Smith-Haynie v. District of Columbia*, 155 F.3d 575, 578 n. 3 (D.C. Cir. 1998) (in the absence of evidence to the contrary, presumed that plaintiff received right-to-sue letter within three days of its issuance).

It is undisputed that the EEOC issued Plaintiff's right-to-sue letter on November 23, 2005. (*See* Dismissal and Notice of Rights, attached hereto as Exhibit 3.) It is presumed that the right-to-sue letter was mailed on the same date of its issuance. *See Anderson v. Local 201 Reinforcing Rodmen*, 866 F.Supp. 94, 97 (D.D.C. 1995). When there is no evidence as to the date on which Plaintiff received the right-to-sue letter in this matter, the Court presumptively relies on the three-day rule. Under that rule, November 26, 2005 is the presumptive date of receipt and is the date that the Court must use for the purposes of determining whether Plaintiff complied with the ninety day requirement. *See id.* Plaintiff did not file his Complaint until February 27, 2006, ninety-three (93) days after his presumed receipt of the right-to-sue letter. Consequently, Plaintiff's claims of discrimination and retaliation are untimely because they were not filed within ninety days of receipt of the right-to-sue letter. *See* 42 U.S.C. §§ 2000e-5(f)(1); 12117(a).

A Plaintiff may rebut the presumptive date of receipt by producing evidence showing he received the right-to-sue letter on some other date. In his Complaint, Plaintiff alleges he received the right-to-sue letter on December 1, 2005. (*See* Complaint ¶ 5.) This bald allegation,

169759-6

however, is contradicted by the record and is insufficient to generate an issue of material fact as to the date of receipt of the right-to-sue letter.[4]

Indeed, Plaintiff's own responses to inquiry regarding his receipt of the right-to-sue letter are contradictory and cannot serve to rebut the presumption of the three day rule. As previously stated, Plaintiff's Complaint initially states that he received the right-to-sue letter on December 1, 2005. (*See* Complaint ¶ 5.) Later, in discovery, Plaintiff was asked, but failed to answer the following interrogatory:

> 16.    State the date listed on the "Notice of Right to Sue" letter, the date you received such letter, and the means (Federal Express, U.S. postal delivery, courier, facsimile, etc.) by which you received such letter.

> **RESPONSE**: [blank].

(*See* Plaintiff's Answer to Interrogatory 16, attached hereto as Exhibit 4.[5])

Thereafter, and only upon request by Defendant, Plaintiff "supplemented" answer number 16 in the form of a letter from Plaintiff's counsel, providing that, "[t]he answer to Interrogatory No. 16 is December 2, 2005." (*See* Exhibit 5; and Letter from Ms. Deane to Ms. Hardnett dated April 13, 2007, attached hereto as Exhibit 17.) This issue became even further muddled when Plaintiff was asked about the right-to-sue letter at his deposition:

> Q    How did you arrive at the date that you say you received the Notice of Rights to Sue letter?

> A    I looked at this and I just made earlier --I'm saying I'm going to have to assume the position because I could not recall. I didn't know what date it was because it has been some time ago, and that I will have to defer to my attorney to respond to that because that information would be something that she would have.

---

[4] A party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading." *Tarpley v. Greene*, 684 F.2d 1, 6 (D.C. Cir. 1982) (citing Fed. R. Civ. P. 56(e)).

[5] Plaintiff's Answers to Interrogatories, served on April 8, 2007, were not executed.

169759-6

(*See* Plaintiff's Deposition, p. 160:13-20, Exhibit 6.)

Plaintiff testified earlier at his deposition that he had no recollection of the date he received the right-to-sue letter:

> Q    You got a letter from the EEOC telling you that your claim -- that they adopted the findings of the state agency which is the DCOHR which was that they found no discrimination on the part of Gallaudet. Do you recognize this letter?
>
> A    I think so.
>
> Q    Do you remember receiving that letter?
>
> A    I'm not going to say no. I'm sure I did receive something that told me of my right to file, you know, a lawsuit.
>
> Q    That letter on there says that you have notice of right -- notice of suit rights, do you see that?
>
> A    Okay, yes.
>
> Q    So that's the letter you're talking about?
>
> A    Yeah.
>
> Q    Do you know the date that you received that letter?
>
> A    No, I do not recall the date.

(*See id.* pp. 131:5–132:1.)

Where, as here, the plaintiff does not know when he received the right-to-sue letter, Federal Rule of civil Procedure 6(e) creates a presumption that the letter was received three days after it was mailed. *See Baldwin County Welcome Ctr.,* 466 U.S. at 148; *Smith-Haynie,* 155 F.3d at 578; *see also Fox v. Giaccia,* 424 F. Supp.2d 1, 6 (D.D.C. 2006) (ruling that plaintiff's deposition testimony was not sufficient to rebut presumption of receipt of right-to-sue notice three days after it was mailed).

7

In a similar case, *Griffin v. Acacia Life Ins. Co.*, 151 F. Supp.2d 78 (D.D.C. 2001),

plaintiff filed a lawsuit against her employer on November 24, 1997, alleging sex discrimination

under Title VII. *Id.* at 81. There was no dispute that the EEOC letter was issued on August 7,

1997, but there was a disagreement as to the date that the plaintiff received the letter. *Id.* at 80.

The employer argued that the Court should apply the presumption that the letter was received

three days after it was mailed,[6] <u>since plaintiff testified at her deposition that she did not know</u>

<u>when she received the Notice of right to Sue letter, and because the plaintiff did not have any</u>

<u>records which reflected the date of receipt</u>. *Id.* (emphasis added). Since the presumptive date of

receipt was more than ninety days prior to November 24, 1997, the employer moved for

summary judgment on the grounds that plaintiff's lawsuit was untimely filed under Title VII. *Id.*

In granting the employer's motion, the Court elucidated its reasoning as follows:

> The speculation by plaintiff's counsel regarding the date plaintiff
> may have told one or more of her attorneys that she received the
> right-to-sue notice is not sufficient to create a genuine issue of
> material fact. Thus, in light of the fact that plaintiff has provided
> insufficiently probative evidence to rebut the presumption that she
> received the right-to-sue notice three days after it was mailed,
> plaintiff has failed to demonstrate that a genuine issue of fact exists
> as to the date on which she received the right-to-sue letter. It is
> undisputed that plaintiff filed her complaint more than ninety-three
> days after the right-to-sue notice was mailed and, as a result, the
> Title VII claims are untimely.

*Id.* at 81; *see also Simpkins,* 2 F. Supp. 2d at 57 n. 6 (rejecting similar evidence and argument as

to date of receipt presented by the plaintiff); *compare Coleman v. Potomac Elec. Power Co.,* 310

F.Supp. 2d 154, 158 (2004) (stating that a letter of apology from United States Postal Service for

repeated letters returned to senders rather than delivered to plaintiff may be sufficient evidence to

rebut presumption of receipt of right-to-sue letter from EEOC three days after issuance).

---

[6] The Court determined that the presumptive date of receipt was August 11, 1997 since August 10, 1997 was a Sunday. *See* Fed. R. Civ. P. 6(e).

Here, as in *Griffin*, speculation by Plaintiff's counsel regarding the date Plaintiff may have told her he received the right-to-sue letter is not sufficient to create a genuine issue of material fact. Further, like the plaintiff in *Griffin*, Plaintiff here has no records regarding the date of receipt to rebut the three day presumption. Thus, when Plaintiff was asked at his deposition to supplement his document production to provide any records he may have regarding the date he received the right-to-sue letter, Plaintiff's counsel interjected and stated on the record,

> I can assure you that I had a conversation with my client about that and everything that is available has been produced. I talked to him extensively about that. It was a conversation that we had over the phone and the information that I presented to you is the information that was available. There is no additional information. I asked him to review whatever he had, to produce it to me. We went through everything and that's the date that we determined he received that information.

(*See* Plaintiff's Deposition, pp. 137:18-138:5, Exhibit 6.)[7]

Since Plaintiff has no evidence to rebut the presumption that he received the right-to-sue letter three days after it was issued there can be no dispute that Plaintiff filed his Complaint ninety-three days after the right-to-sue notice was received. Consequently, Plaintiff's claims are untimely. The United States Supreme Court has made it clear that "strict adherence to the procedural requirement specified by the legislature is the best guarantee of evenhanded administration of the law." *Baldwin County Welcome Ctr.*, 466 U.S. at 152. In addition, this Court has stated that "[t]ime limitations such as the ninety-day filing requirement are not arbitrary obstacles to the vindication of just claims, but rather, they protect important social interests in certainty, accuracy, and repose." *See Anderson*, 866 F. Supp. at 97 *(citing Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 452-53 (7th Cir.1990)). Accordingly, in the absence of

---

[7] Earlier in the deposition, Plaintiff also testified that he would "check and see" if he had the envelope that the right-to-sue letter arrived in. (*See* Plaintiff's Deposition, p. 132:4-7, Exhibit 6.) No envelope or any other document was produced following Plaintiff's deposition. The discovery deadline in this action was August 9, 2007.

waiver, estoppel, or equitable tolling, none of which are present here, summary judgment in favor of the Defendant is appropriate as to both Counts of Plaintiff's Complaint. *See Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393 (1982) (opining that in the absence equitable tolling, a civil suit filed even one day late is barred and may be dismissed).

**B.**     **Plaintiff fails to state a claim for hostile work environment.**

In the event the Court determines that Plaintiff's claims are timely, Plaintiff's claim for hostile work environment should nonetheless be dismissed because: (1) Plaintiff failed to exhaust his administrative remedies with regard to this claim; and (2) Plaintiff has failed to any allege hostile conduct by Gallaudet as a matter of law.

**1.**     **Plaintiff Failed to File His Claim for Hostile Work Environment at the Administrative Level.**

Prior to filing suit in district court, Title VII of the Civil Rights Act requires an aggrieved party to exhaust his administrative remedies by filing a complaint with the Equal Employment Opportunity Commission ("EEOC"). 42 U.S.C. § 2000(e) – 5(2002); *see also Washington v. Washington Metropolitan Transit Authority,* 160 F.3d 750, 752 (D.C. Cir. 1998), *cert denied,* 527 U.S. 1038 (1999). This Court has ruled that "[e]xhaustion of this administrative remedy is a prerequisite to judicial relief." *Caliendo v. Bentsen,* 881 F. Supp. 44, 47 (1995) (citing *Siegel v. Kreps,* 654 F.2d 773, 776-77 (D.C. Cir. 1981)). Consequently, a Title VII claim can only be based on conduct that for which Plaintiff made a timely complaint to the EEOC. *Id.* This rule serves to protect Defendants from stale claims and allows Defendants to provide an adequate defense to discrimination claims. *Id.*

In this case, the charge Plaintiff filed with the District of Columbia Office of Human Rights ("OHR") on February 6, 2005 is clearly limited to Gallaudet's decision not to hire Plaintiff for the position of the Director of the Career Center. (*See* Exhibit 1.) In his application

to OHR, Plaintiff made absolutely no claim of a hostile work environment. Despite this failure to raise the issue in the administrative process, Plaintiff's Complaint alleges: "Defendant, through its employees and agents, wrongfully delayed Plaintiff's employment advances and condoned retaliatory and hostility [sic] directed against Plaintiff after he sought advancement in his employment." (Complaint ¶ 17.) In accordance with the clear and unequivocal holdings of the Court, Plaintiff's claims must be limited to only those set forth in the charge he filed with the OHR. Consequently, since Plaintiff failed to raise the issue of a hostile work environment at the administrative level, summary judgment must be granted on this claim.

### 2. Plaintiff cannot establish a *prima facie* claim for hostile work environment.

Assuming *arguendo*, that Plaintiff's failure to exhaust remedies at the administrative level does not result in dismissal of this claim it should nonetheless be dismissed because Plaintiff has failed to allege hostile conduct by Gallaudet as a matter of law. A hostile work environment exists "only when the offensive conduct 'permeates [the workplace] with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the condition of the victim's employment and create an abusive working environment.'" *Barbour v. Browner*, 181 F.3d 1342, 1347-48 (D.C. Cir. 1999) (quoting *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 78 (1998)); *see also Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993). In the case at bar, Plaintiff cannot establish a *prima facie* claim for hostile work environment because the conduct about which he complains was not sufficiently "severe or pervasive" as a matter of law. *See, Harris*, 510 U.S. at 21.

While Plaintiff contends he was subjected to hostility at work, his own testimony belies such claims. Plaintiff concedes he has never been subjected to any insulting remarks regarding his gender, race, or disability, he has never been physically threatened, and he has never been

169759-6

prevented from working due to a hostile work environment. (*See* Plaintiff's Deposition, p. 65:6-19, Exhibit 6.) Nonetheless, Plaintiff alleges he was subjected to a hostile work environment because of "tension" between he and his supervisor, Edgar Palmer[8], resulting in, on at least one occasion, Mr. Palmer lowering his annual performance evaluation from "distinguished to commendable." (*See id.* pp. 69:7-72:7.)

As demonstrated by the record in this matter, the alleged conduct of Gallaudet cannot be said to have "permeated" Plaintiff's work environment with "discriminatory intimidation, ridicule, and insult." *See Barbour,* 181 F.2d at 1347-48. Simply put, the conduct claimed by Plaintiff is not "severe or pervasive" and therefore is wholly inadequate to establish a *prima facie* claim for hostile work environment. Accordingly, Gallaudet is entitled to summary judgment as to Plaintiff's claim for hostile work environment.

**C.    Plaintiff Has Not Demonstrated that Defendant's Asserted Legitimate, Nondiscriminatory and Nonretaliatory Justifications for the Personnel Actions Were Pretextual.**

"This Court...requires a plaintiff to state a *prima facie* claim of discrimination by establishing that: '(1) she is a member of a protected class; (2) she suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination.'" *Stella v. Mineta,* 284 F.3d 135, 145 (D.C. Cir. 2002) (quoting *Brown v. Brody,* 199 F.3d 446, 452 (D.C. Cir. 1999)). It is the plaintiff's burden to establish a *prima facie* case of discrimination by a preponderance of the evidence. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817 (1973).

---

[8] It should be noted that Mr. Palmer is a deaf, black male. Plaintiff's complaints about Mr. Palmer are apparently related to his perception that Mr. Palmer is an "Oreo," which Plaintiff describes as "a person who's white on the inside but have -- but black on the outside so like the cookie where you have white filling but its black." (*See id.*, pp. 102:17-21; 105:6-11.) Consequently, the only evidence of any racial slurs being used are those used by the Plaintiff to describe his supervisor.

169759-6

Though Defendant disputes Plaintiff has met that burden in this case, Defendant will proceed, for the purposes of this Motion only, as if Plaintiff had established a *prima facie* case.[9] Once Plaintiff's *prima facie* case has been established, the burden then shifts to the Defendant to articulate a legitimate non-discriminatory reason for the adverse employment action. *See McDonnell,* 411 U.S. at 802. If the defendant "articulates a sufficient reason, the presumption raised by the *prima facie* case is rebutted, and the burden shifts back to the Plaintiff to produce some evidence, either direct or circumstantial, to show that the defendant's articulated non-discriminatory reason for the challenged decision is pretextual." *Keith v. Duffy,* 77 F. Supp. 2d 46, 49-50 (*citing Paul v. Federal Nat'l Mortgage Ass'n,* 697 F. Supp. 547, 553 (D.D.C. 1988)).

Defendant possesses voluminous interview notes regarding the position of Career Center Director, all of which clearly show Plaintiff was not hired for this position due to legitimate, nondiscriminatory reasons -- namely, he was not the most qualified candidate for the job.

On May 3, 2004, Mr. Plaintiff interviewed for the position of Career Center Director. There were fifty-two (52) applicants, of which only thirteen (13), including Plaintiff, were chosen for an interview by the committee. (*See* Gallaudet Requisition Apps, attached hereto as Exhibit 18.) Plaintiff contends he was discriminated against because he was more qualified than other candidates, who, he claims, "did not have experience at the university level," "did not have an employment background in employment services," "did not work with individuals with disabilities in employment," and "did not have administrative experiences." (*See* Plaintiff's Deposition, p. 80:11-15, Exhibit 6.)

However, as shown in the table below, prepared based on the information provided from the screening committee, the evidence in this case clearly refutes Plaintiff's contention that the

---

[9] At his deposition, Plaintiff conceded he had no claim for discrimination based on gender. (*See id.,* pp. 23:15-19; 24:14-19.)

169759-6

other candidates did not possess said qualifications. (*See* Exhibits 14-16; and Resumes of Candidates, attached hereto as Exhibit 19.)  The table lists the candidates in order from highest to lowest ranking, as determined by the screening committee. (*See* Exhibit 13.)

| Candidate | Gender | Race | Hearing / Deaf | Education | Experience at the University Level | Employment Background- Employment Services | Experience Working with Individuals with Disabilities | Admin. Experience |
|---|---|---|---|---|---|---|---|---|
| Steve Koppi | Male | White | Hearing | M.A. | Yes | Yes | Yes | Yes |
| Alan Marcus | Male | White | Hearing | Ph.D. | No | No | Yes | Yes |
| William Olubodun | Male | Black | Deaf | Ph.D. | Yes | Yes | Yes | Yes |
| Martin Keller | Male | White | Deaf | M.A. | No | No | Yes | Yes |
| Sharrell McCaskill | Female | Black | Hearing | M.S. | Yes | Yes | Yes | Yes |
| Daniel Timlen | Male | White | Hearing | M.A. | Yes | Yes | Yes | Yes |
| Lawrence Cohen | Male | White | Deaf | M.S.W. | No | Yes | Yes | Yes |
| Michael Cooke | Male | White | Deaf | B.S. | No | Yes | Yes | Yes |
| Paul Singleton | Male | White | Deaf | M.S. | No | Yes | Yes | Yes |
| Dorothy Steele | Female | White | Deaf | M.A. | No | Yes | Yes | Yes |
| Catherine McGinnis | Female | White | Hearing | M.S. | Yes | Yes | Yes | Yes |
| Bennett Morrison | White | Male | Hearing | M.S. | Yes | Yes | Yes | Yes |
| James Akridge | Black | Male | Deaf | Ph.D. | Yes | Yes | Yes | Yes |

In addition, the screening committee considered several other qualifications important in its selection process.  For example, many of the other candidates possessed knowledge of career development theories, communication skills, and leadership and management experience, which far surpassed Plaintiff's qualifications in these areas.  (*See* Screening Committee Evaluation Forms for Candidates, James Akridge, and Steve Koppi, attached hereto as Exhibits 20, 21 and 22 respectively.)  In addition, while most of the other candidates were noted as having a positive

169759-6

attitude or a pleasant demeanor, the screening committee found Plaintiff to have a "negative attitude." (*See* Exhibit 21.) Also of paramount importance to the selection committee was each candidate's presentation on his/her "Vision Plan for the Career Center." The evidence clearly establishes that Plaintiff received unfavorable evaluations from the audience members on his presentation and faired poorly in comparison to the other candidates. (*See* Exhibits 11 & 12; and Evaluations of Candidates' presentations, attached hereto as Exhibit 23.)

After evaluation of all the applicants, the interview committee awarded the position to Steve Koppi, a Caucasian, hearing male. The interviewers felt Mr. Koppi was the best candidate for the job because he was "highly organized," and had "excellent experience in career development and administration at postsecondary level," "excellent thorough, up-to-date knowledge of career development and practice," and "strong management and budget experience." (*See* Exhibit 13.) In contrast, the committee felt that Plaintiff was not prepared for the interview, had "no understanding of career development," a "negative attitude about hiring disabled," and "no real leadership style." (*See* Exhibit 21.) Overall, while the screening committee felt Plaintiff had a good background for the job, they believed Plaintiff did poorly in his interview. (*See id.*) The committee member's individual evaluations of Plaintiff cite numerous legitimate, nondiscriminatory reasons for hiring another candidate. (*See id.;* Exhibits 14-16.) In particular, the committee found the presentation Plaintiff submitted for review was weak and did not address the concerns of the career center. (*See id.,* Exhibits 10 & 11.) Consequently, Plaintiff was ranked last among the candidates who interviewed for Director of the Career Center, and the position was awarded to the highest ranking candidate, Steve Koppi. (*See* Exhibit 13.)

**D.     Defendant Did Not Retaliate Against Plaintiff.**

In order to establish a *prima facie* case of retaliation, a plaintiff must demonstrate: (1) that he engaged in a statutorily protected activity[10]; (2) that the employer took an adverse employment action; and (3) that a causal connection existed between the two. *Brown v. Brody*, 199 F.3d 446, 452 (D.C. Cir. 1999).

The basis for Gallaudet's decision not to hire Plaintiff for the position of Director of the Career Center is incontrovertible. As explained in part II.C, *supra*, Gallaudet's decision not to hire Plaintiff for the position of Director of the Career Center was for legitimate and nondiscriminatory reasons. Plaintiff does not provide evidence of any action or inaction by Gallaudet that could be deemed to be retaliatory with regard to any protected conduct. On the contrary, Plaintiff's claim is based solely on Plaintiff's belief he was retaliated against by screening committee member, Edgar Palmer, for not "kowtowing to his title." (*See* Plaintiff's Deposition, pp. 47:9-50:6, Exhibit 6.) Plaintiff's alleged failure to "kowtow" to Mr. Palmer does not constitute "protected activity" as a matter of law. Plaintiff's claim that his e-mail account was deleted "around the time" of his first lawsuit is likewise inconsequential because it does not constitute an employment decision or adverse personnel action. *See Roberts v. Segal Co.*, 125 F. Supp. 2d 545, 549 (D.D.C. 2000).[11]

Even assuming *arguendo* that Plaintiff established the first two elements necessary for a prima facie case of retaliation, Plaintiff's claim nevertheless fails because there is no evidence of

---

[10] In his EEOC Charge of Discrimination, Plaintiff did not check off the box available for "retaliation." (*See* Exhibit 1.) The only protected activity alleged by Plaintiff was that he filed an internal discrimination complaint in 1998 based on race. (*See id.*) Plaintiff alleges in his Complaint that "Defendant's adverse action was in retaliation to Plaintiff's prior EEO activity." (Complaint ¶ 22.) Although Defendant disputes the nature of the "protected activity" at issue., Defendant will proceed, for the purposes of this Motion only, as if Plaintiff has alleged prior EEO activity at the administrative level.

[11] Plaintiff's claim about his e-mail account arose for the first time at his deposition and the Complaint lacks any allegation of any such issue.

16                                                                                                      169759-6

a causal nexus between Gallaudet's decision not to hire Plaintiff for the position of Director of the Career Center and Plaintiff's protected conduct. Accordingly, Plaintiff's fails to make out a *prima facie* claim for retaliation.

## IV.    CONCLUSION

WHEREFORE, based on the foregoing, Defendant Gallaudet University respectfully requests that this Court grant its Motion for Summary Judgment on all counts listed in Plaintiff's Complaint.

Respectfully submitted,

BONNER KIERNAN TREBACH & CROCIATA, LLP

Christopher E. Hassell, #291641
Heather S. Deane, #471834
1233 20th Street, NW
Suite 800
Washington, DC 20036
(202) 712-7000
(202) 712-7100 (fax)

17

169759-6