IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| JAMES AKRIDGE | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 1:06-cv-00346-RMU-AK |
| | ) | |
| v. | ) | |
| | ) | |
| GALLAUDET UNIVERSITY | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT GALLAUDET UNIVERSITY'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff JAMES AKRIDGE by and through counsel, C. Sukari Hardnett, Esq. and the Law Office of C. Sukari Hardnett, submits his Opposition to Defendant Gallaudet University's Motion for Summary Judgment and avers:

**I. FACTUAL BACKGROUND**

There has been much media coverage about the protests and ongoing tensions at Gallaudet University, relating to what many perceive is Defendant's practice of selecting less qualified white males for high ranking positions in the University over qualified minorities. Plaintiff James Akridge is one of the qualified individuals that Defendant wrongfully denied advancement opportunities. *See* Deposition of Plaintiff pp. 23, 26-27, 42, 46, 47, 54-55, 60, 116 (a copy of the relevant portions of Plaintiff's Deposition Transcript is attached as "Plaintiff's Exhibit A"); *see also* Plaintiff's Responses to Interrogatory Nos.7, 11, 12-14, 19 (attached as "Plaintiff's Exhibit B").

Plaintiff is an African American male who has a hearing impairment *See* Deposition of Plaintiff pp. 35-36. Plaintiff has worked for Gallaudet for fifteen years. *See* Plaintiff's Responses to Interrogatory No. 15. During this time Plaintiff has applied for and has been denied promotion on nine different occasions. *See* Plaintiff's Responses to Interrogatory No. 16. In each case, the position was given to a white applicant who did not have a hearing impairment. *See* Deposition of Plaintiff at p. 23. Plaintiff has a higher educational level and is more qualified for the position of Director of Career Center than the white male who Defendant selected for the position. *See* Deposition of Plaintiff pp. 23, 26-27, 42, 46, 47, 54-55, 60, 116; *see also* Plaintiff's Responses to Interrogatory Nos.7, 11, 12-14, 19.

Defendant frustrated Plaintiff's attempt to apply for the position; initially, Defendant returned Plaintiff's application telling the Plaintiff that it was because Defendant was allegedly looking for a change agent who was not affiliated with the deaf community and someone outside of Gallaudet University. *See* Deposition of Plaintiff at p. 38. However, when Plaintiff saw the list of interview candidates, he noted that one applicant was affiliated with the university and a number of candidates did not have high level experience, and a few that had no experience working with hearing impaired students. *See Id.* After Plaintiff confronted Defendant with these facts, Defendant agreed to allow the Plaintiff to interview for the position. *See Id.* But unlike the other mostly white applicants, Plaintiff's name was not posted as one of the possible candidates, so that the public could observe his interview. *See Id.* Defendant would later change its basis for denying the Plaintiff the position by stating that it was ostensibly because

Plaintiff did not have experience at the University level. *See* Deposition of Plaintiff at p. 109.

Defendant denied the Plaintiff the position of Career Center Director, and as is its practice, Defendant gave the position to a less qualified white male. *See* Deposition of Plaintiff pp. 23, 26-27, 42, 46, 47, 54-55, 60, 116; *see also* Plaintiff's Responses to Interrogatory Nos.7, 11, 12-14, 16, 19. Defendant cannot dispute that the individual who was selected for the position had no sign language skills at the time of interview or hiring, no experience or background in work employment with hearing impaired students, and no educational background reflecting the requirements for the position. *See* Plaintiff's Responses to Interrogatory No. 13. Plaintiff has a higher educational level. *See Id.* Plaintiff education extended to the PHD level; while the candidate selected for the position only had a MA. *See Id.*

Plaintiff has experience at the university level (Vocational Rehabilitation for Both the State and Federal Government). *See Id.* In fifteen years of employment Plaintiff never received anything less than commendable on any performance evaluation with any other employer. *See Id.* Plaintiff has sign language skills which is important for the position. *See Id.* The person Defendant selected for the position did not. *See Id.* Plaintiff has experience in job service and job placement for the hearing impaired and individuals with multiple disabilities. *See Id.* The person selected for the position did not. *See Id.*

Plaintiff filed a timely administrative charge to challenge this misconduct. Plaintiff received the Right to Sue Notice on December 2, 2005. *See* Plaintiff's Responses to Interrogatory No. 16.

## II. STATEMENT OF MATERIAL FACTS UPON WHICH THERE IS A DISUPTE

Plaintiff identifies each of the material facts that are for purposes of this motion in dispute:

(I) Defendant's decision not to hire the Plaintiff was because the Plaintiff is an African-American with a hearing impairment and not for the reasons that Defendant asserts. *See* Deposition of Plaintiff pp. 23, 26-27, 33, 35-38, 41-42, 46-47, 55-56, 60-62, 89, 90, 95-96, 100, 106, 109, 118-120; *see also* Defendant's Motion for Summary Judgment at pp. 13-15;

(II) Plaintiff is more qualified for the position of Career Center Director than the Defendant. *See* Deposition of Plaintiff pp. 89-90; Plaintiff's Response to Interrogatory No. 13; *see also* Defendant's Motion for Summary Judgment at pp. 13-15.

(III) Defendant's denial of Plaintiff's application for promotion on nine different occasions is part of a pattern and practice of discrimination. *See* Plaintiff's Response to Interrogatory No. 16;

(IV) Defendant initially screened out Plaintiff's application for the position of Career Center Director because of discriminatory reasons and not because the Defendant was seeking someone outside of Gallaudet as alleged. *See* Deposition of Plaintiff pp. *See* Deposition of Plaintiff at p. 38; *see also* Defendant's Motion for Summary Judgment at pp. 13-15;

(V) Defendant denied Plaintiff the position of Career Center Director based upon discriminatory reasons and not because the Plaintiff did not have experience at the University level as Defendant alleged. *See* Deposition of Plaintiff at p. 109; *see also* Defendant's Motion for Summary Judgment at pp. 13-15;

4

(VI)    Defendant denied Plaintiff the position of Career Center Director based upon discriminatory reasons. *See* Deposition of Plaintiff pp. 23, 26-27, 33, 35-38, 41-42, 46-47, 55-56, 60-62, 89, 90, 95-96, 100, 106, 109, 118-120; *see also* Defendant's Motion for Summary Judgment at pp. 13-15;

(VII)    Gallaudet has a pattern and practice of institutionalized racism. *See* Deposition of Plaintiff pp. 23, 28, 30-32, 35-36, 41-42, 60-62, 128;

(VIII)    Plaintiff received the Right to Sue Notice on December 2, 2007. *See* Plaintiff's Responses to Interrogatory No. 16; *see also* Defendant's Motion for Summary Judgment at pp. 4-9.

### III. STATEMENT OF MATERIAL FACTS THAT ARE NOT IN DISUPTE

The following material facts are not in dispute. These facts reflect that the reasons asserted by the Defendant purportedly as the basis for its decision not to select the Plaintiff for the position of Career Center Director constituted a pretext to conceal discrimination:

(I)    Plaintiff is an African-American male with a hearing impairment. *See* Deposition of Plaintiff pp. 35-36;

(II)    Defendant denied the Plaintiff positions to which he applied on nine occasions. *See* Deposition of Plaintiff pp. 35-36;

(III)    All of the positions for which Plaintiff was denied were given to white applicants who did not have hearing impairments. *See* Deposition of Plaintiff at p. 23;

(IV)   The individual that Defendant selected as Career Center Director is a white male who is not hearing impaired. *See* Defendant's Motion for Summary Judgment at p. 14;

(V)   The white male that Defendant selected as Career Center Director does not have the level of education that Plaintiff has. *See* Deposition of Plaintiff pp. 23, 26-27, 42, 46, 47, 54-55, 60, 116; Plaintiff's Responses to Interrogatory Nos.7, 11, 12-14, 19. *see also* Defendant's Motion for Summary Judgment at p. 14;

(VI)   Plaintiff is qualified in all four areas of job qualifications identified by the Defendant. *See* Defendant's Motion for Summary Judgment at p. 14;

(VII)   The Human Resources Department identified the Plaintiff as qualified and forwarded Plaintiff's application to the Interview Committee, who returned Plaintiff's application prior to giving him an interview. *See* Deposition of Plaintiff at p. 38;

(VIII)   It is not until Plaintiff protested that Defendant allowed him to interview for the position. *See* Deposition of Plaintiff at p. 38;

(IX)   Plaintiff stated in his signed and sworn discovery responses that he received the Right to Sue Notice on December 2, 2007.

### IV. PLAINTIFF FILED THIS ACTION WITHIN NINETY DAYS OF RECEIPT OF THE EEOC RIGHT TO SUE NOTICE

Defendant alleges that Plaintiff's action was untimely, but it was not. Plaintiff stated in his discovery responses that he received the Right to Sue Notice on December 2, 2005. Plaintiff also clarified in his deposition that he received the Right to Sue Notice on that date. Thus, this action is timely. Defendant attempts to controvert these facts by

pointing to alleged discrepancies in Plaintiff's discovery responses and Complaint. These are not sufficient to counter Plaintiff's sworn declarations.

For the record, in the faxed responses that Plaintiff submitted, his response to the date of receipt was erroneously omitted. However, this omission was corrected in the discovery responses that Plaintiff mailed only after Plaintiff was able to confirm the date he received the notice. Plaintiff has submitted signed discovery responses attesting to the date of receipt of that notice. The presumption regarding the date of receipt of the Right to Sue Notice only applies when the date of receipt of the Right to Sue Notice is not known. *See Smith Haynie v. District of Columbia*, 155 F.3d 575, 578 n. 3 (D.C. Cir. 1998). In this case the presumption does not apply because the Plaintiff knows the date that he received the notice. Therefore his action is timely.

### V. PLAINTIFF HAS UNCONTROVERTED EVIDENCE THAT DEFENDANT ENGAGES IN A PATTERN AND PRACTICE OF INSTITUTIONALIZED DISCRIMINATION

Title VII of the Civil Rights Act of 1968 (as amended) prohibits Defendant Gallaudet from discriminating against any individual on the basis of race, sex, disability, age or national origin. In this action Plaintiff has uncontroverted facts that Gallaudet has an institutionalized practice of discriminating against qualified minorities and against individuals with hearing impairments and that Gallaudet denied the Plaintiff numerous job advancement opportunities because of his race and disability.

**A. Defendant Discriminated Against the Plaintiff in Job Promotion and Advancement on the Basis of His Race and Disability:**

Plaintiff articulated the basis for his discrimination claim in his deposition and discovery responses based upon his race and disability. Plaintiff testified that he has

7

worked at Gallaudet for over fifteen years. Plaintiff applied for and was denied nine different job positions at Gallaudet. Each time Defendant filled each of the positions with less qualified white applicant. Some of the positions were filled by people who actually worked for the Plaintiff. Furthermore, Plaintiff's testimony about the discrimination is credible and helps to dispel Defendant's purported non discriminatory reasons for Defendant's actions:

> There was another situation where I went on a job interview and received some very positive responses from people who serve on the Interview Committee and one even ventured to tell me -- I did very well on the Interview Committee and one person ventured to tell me that he thought I had the job, and the person who told me this was an African-American who was on the Interview Committee, however, the job was given to someone who did not have the qualifications or experience that I had in applying for the position. Another instance was when I applied for a position which I was clearly qualified to handle and I was told that I did not have experience at the university level for the position, however, the same department head hired two employees or two former employees who served under me who did not have experience at the university level but they got their jobs and I didn't get mine, but yet the excuse that they me was that I did not have experience at the university level even though the position was the same position that I was working a couple years previous, whereas the two who were hired never had that same experience. Another time was I applied for the coordinator position of the director –

8

coordinator position of the Career Center and again I was denied…
Deposition of Plaintiff pp. 26-27.

These uncontroverted facts support Plaintiff's claims that the Defendant engages in discriminatory practices with regards to the promotion and advancement of minority and/or disabled applicants. Plaintiff's provides further supporting testimony which is uncontroverted:

Well, this is a deaf institution for the deaf and hard of hearing students. The philosophy is that we should hire from within and that we can do everything but hear, and that the person who received the position -- who was hired for the position is a hearing person and all the persons who occupied that job has all been hearing. No one deaf or hard of hearing has ever been hired for that position.

Q     Were you told that your disability was the reason you were not hired for the position of Career Center Director?

A     I was not told that. It's just the history of the institution to hire hearing people for certain positions and that position is one such position. In fact, this is the first time that that position has ever been advertised. All the previous directors of that position have been appointed and they have been hearing appointees. Deposition of Plaintiff pp.35-36.

The fact that the Defendant has never hired a hearing impaired applicant for the position for which he applied and that Defendant never advertised the position is factual evidence of intentional discrimination and shows Defendant's intent, motive, scheme

and/or design. As Plaintiff testified the fact that Defendant engaged in discriminatory practices is widely known throughout the Gallaudet Community:

> No one ever approached me to tell me why I did not get hired for this job or any other job. It's not something that anyone would discuss because it's sort of like common knowledge. Again, all you need to do is check the blog, Gallaudet blog and it's just all out there and open about the discrimination practice, about the audism practice, you know, and many of these people who are airing out these situations happening on the institution chose not to divulge their name I think for the reasons that they are concerned and afraid of retaliation and that sort of thing but it's so prevalent. It's not even held behind closed doors anymore. It's just becoming an open topic so there's no one need to come to me and say you were discriminated against. I already know this. I mean this just come from knowing it, from experiencing it. I don't need anyone to tell me that I'm hungry to know that I'm hungry.
>
> Q   What is an example of how it's pervasive at the university?
>
> A   Well, the most obvious example is an African minority being demoted or being terminated or not being promoted or advanced or not being hired for positions. Most of the positions that do get filled by African-Americans or minorities are ones that tend to be creative type positions and tend to focus more on student service type positions like mentorship or, you know, planning or something like that but it's never one of a position where there's an after impact or decision or after the

    impact knowing the operation and function of the university. The position was never formally held by an African-American when they get vacated. They fill with Caucasians. Deposition of Plaintiff pp. 60-61.

Plaintiff has presented detailed allegations to support his discrimination claim which are entitled to great weight. Plaintiff put it best when pressed by Defendant's counsel for the basis of his claims for discrimination with regards to the denial of the position of Director of the Career Center:

    As I mentioned before, that traditionally that position has been held by hearing people and they have all been appointed. This is the first time that the position has been advertised and the first time that there's been an interview process involved and lo and behold, there's still a hearing person in the position.

    Q   So your claim for discrimination based on disability is based on the -- is it based on the history of discrimination based on disability that you have seen at Gallaudet?

    A   **Seen, felt, tasted, smelled. All my senses alert me to the discrimination going on in that institution and again, the position has always been filled by hearing people and it's still filled by hearing people.** (Emphasis added). Deposition of Plaintiff p. 47.

Moreover, as Plaintiff rightfully acknowledges in his deposition, the act of denying him for denial of the position of Director of Career Center cannot be viewed in isolation, it must be taken in context of the pattern of conduct in which the Defendant engaged and perpetrated against the Plaintiff over the course of thirteen years:

11

Again, we're going to have to look at the pattern. I mean you can focus on that one incident if you want to but this is just one of a pattern dating all the way back to 1992, okay? Again, every job that I applied for I never received except for the current job that I have now. Every job that I applied for with the possible exception of maybe one or two, I may have been the only minority. Every time the job was filled by a white person. I have seen situations where I've been told that I didn't get the job because of lack of experience at the university level and yet, they turn around and hire two of my former employees who I knew did not have experience at the university level and who had applied for those similar type jobs at the department that I worked for but didn't get the job because they were not qualified..

Q    Were you the best qualified person for every position that you interviewed for at Gallaudet and didn't get?

A.    Based on the people that were selected, yes. I'm not saying I was the best qualified candidate among the pool that applied for the job but I do know that I'm a far better candidate, more qualified than the ones who were selected for the position.

Plaintiff has presented detailed and uncontroverted facts to support his claim for discrimination in advancement opportunities sufficient to prevail on a motion for summary judgment.

B. **Plaintiff Has Sufficient Facts to Support His Claim for Hostile Work Environment and Retaliation:**

Plaintiff raised the issue of hostile work environment and retaliation in his administrative charge. *See* Deposition of Plaintiff pp. 147-148. Plaintiff also provided an indication in his deposition of the nature of the hostile work environment that he endured at Gallaudet:

> The hostile environment is the director not speaking to you, just walking past you, he relaying messages through a third-party, me practically keeping my office door closed because, you know, there's just that tension that come up when he passes through so that's the type of hostile environment that I'm in. Deposition of the Plaintiff at p. 33.

Plaintiff was isolated and treated differently than other employees, which is another part of the hostile work environment:

> I went to enter the Ph.D. program, however, the classes conflicted with my work schedule so I had to get permission from the administrators in order to attend classes. I've learned that while other employees or staff were permitted to attend classes in the evening, I was required to submit either annual leave or take my classes on weekends where there's no conflict with my work schedule or I was required to use compensation. Other staff were not required to follow these procedures that I was forced to follow.

> Another instance is that there was an administrator restructuring going on, and under the restructuring some jobs were eliminated and some jobs were opened or created. At that particular time, I was occupying an upper

13

administrative position and I was demoted to a former job that I held and was required to reapply for other jobs, and it so happened that I was the only minority out of approximately twenty-three staff from that particular department who applied for various jobs. Everybody got their jobs on the first interview and I didn't get a job and I was the only minority in that group who did not receive a job even though I went on several interviews for several jobs, and some of the jobs that those employees received were jobs that I highly qualified for but did not get selected, and I thought it was discrimination because those employees who received the jobs was employees who were working under me and therefore, if they could do the job, if they were qualified for the position, I should have been as well. Deposition of Plaintiff pp. 25-26.

The hostile environment was also created by an environment that punished those that challenged the discriminatory practices, as Plaintiff explained:

Well, Mr. Dunn had sent out a memo to the African-American faculty and staff requesting an assembly to discuss the discrimination pattern on within the institution. The meeting never took place because he was reprimanded. He had to retract the memo and change the theme of the memo to something like how can we get together to discuss ways to improve our involvement for the students, African-American students. This was as recent as last year, primarily during the time of the protest on campus. He made this comment because he noticed a shifting in African-American status. For example, some African-Americans who were in a

high position were being demoted or they were being transferred or they were being terminated and some was not being hired.

When Plaintiff applied for the position of Director of the Career Center he was retaliated against for his prior complaints of discrimination. There was a two step application process: (1) first the Human Resources Department determined whether the applicant was qualified for the job; and (2) the Human Resources Department forwarded the qualified applicants to the Interview Committee for interviews and further screening. *See* Deposition of Plaintiff pp. 37-38. However, the Interview Committee returned Plaintiff's application to the Human Resources department prior to giving the Plaintiff an interview. *See* Deposition of Plaintiff pp. 37-38. It is only when Plaintiff challenged this that Defendant allowed the Plaintiff to interview. *See Id.* Still Defendant did not include the Plaintiff as one of the listed candidates so that the public could observe the interview unlike the other candidates.

Defendant has not proffered any evidence to dispel Plaintiff's sworn testimony about his disparate treatment, retaliation, and about Defendant's discrimination practices. Accordingly, Defendant is not entitled to summary judgment.

C.  **The Evidence that Defendant Submits in Support of its Motion for Summary Judgment Reflects that Defendant Engages in Discriminatory Employment Practices:**

In its motion for summary judgment Defendant presents a table that it compiled listing biographical data and qualifications Defendant identified as being important to the job along with that person's rank in the interview process. *See* Defendant's Motion for Summary Judgment at p. 14. This table actually supports Plaintiff's allegations of discrimination.

To begin with, although the applicants that Defendant identifies as "black" all have the four requisite qualifications for the job, Defendant ranked them lower than white applicants with only two of the four identified qualifications. Moreover, although William Olubodon (who Defendant identifies as a deaf black male) has a higher educational level and all four of the requisite job qualifications, he was nonetheless passed over for the position and ranked lower than Steven Koppi, a white male with less education. The table also reflects that although all of the "black" applicants appear to have sufficient experience and education none of them received the position. These facts fully support Plaintiff's claims of discrimination.

### VI. THE REASONS THAT DEFEDNANT ASSERTS TO SUPPORT ITS DECISION NOT TO HIRE THE PLAINTIFF ARE ONLY A PRETEXT TO CONCEAL DISCRIMINATION

Defendant alleges that its decision not to select the Plaintiff for the Career Center Director was for bona fide reasons. This comes as no surprise. In every discrimination case, the defendant comes up with some explanation to conceal its discriminatory actions. It is unlikely that any defendant has ever just simply admitted to misconduct. Instead, the defendants assert some excuse as a pretext to conceal its discriminatory practices, which is just what the Defendant has done in this case. However, as detailed in this case, there are numerous facts in the record that evinces that this is only pretext:

(1) Plaintiff applied for thirteen different positions in twelve years and was denied the position each and every time, and all of the jobs were given to white males who did not have a hearing impairment; (2) Plaintiff was only offered a grant position as a project director after he sued Defendant for discrimination, a temporary position that did not include benefits; (3) the position of Director of the Career Center was given to a white

male who did not have a hearing impairment and who Defendant's own documents reflect was less qualified than the Plaintiff; (4) Plaintiff was initially screened out of the process ostensibly because Defendant allegedly wanted someone outside of the Gallaudet community, but one of the white applicants who was selected for the interview worked at Gallaudet; (5) it is only when Plaintiff brought up this discrepancy that Defendant included Plaintiff's application and gave him an interview; (6) unlike the other mostly white applicants, Plaintiff's name was not posted as one of the possible candidates being interviewed so that the public could observe the interview; (7) there are discrepancies between the number of people that Defendant alleges observed the Plaintiff and allegedly had an unfavorable view of him and that who actually interviewed the Plaintiff; (8) the members of the committee that did not select the Plaintiff are all part of Defendant's institutionalized racism and audism; (9) the protests that have erupted at Gallaudet all relate to the same pattern of discriminatory conduct that for which Plaintiff brings a claim for damages in this action; (10) Defendant's own records reflects that Defendant engages in discriminatory hiring and promotion practices; (11) Defendant provided conflicting and inconsistent reasons to justify its failure select the Plaintiff for Career Center Director.

     All of these facts evince that Defendant's alleged non discriminatory reasons for not selecting the Plaintiff are a pretext to conceal its discriminatory practices perpetrated against the Plaintiff and against other qualified minorities and those with disabilities.

17

## VII. CONCLUSION AND PRAYER FOR RELIEF

In every discrimination case the defendant presents alleged bona fide and legitimate reasons to conceal its discriminatory practices. In this case the reasons that Defendant Gallaudet University asserts in support of its position are demonstrably a pretext for discrimination. Accordingly, Plaintiff seeks that this Court deny Defendant's Motion for Summary Judgment and grant all such just and further relief as the court deems just and proper.

Respectfully submitted,
JAMES AKRIDGE


By:   /s/
           Counsel


C. Sukari Hardnett, Esq.
Law Office of C. Sukari Hardnett
1111 Bonifant Street
Silver Spring, Maryland 20910
Tel: (301) 587-7001