# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JAMES AKRIDGE,                          :

                                       :

             Plaintiff,               :        Civil Action No.:     06-0346 (RMU)

                                         :

             v.                         :        Re Document No.:    23, 36

                                         :

GALLAUDET UNIVERSITY,           :

                                       :

             Defendant.            :

## MEMORANDUM OPINION

### GRANTING THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION

This matter comes before the court on the defendant's motion for summary judgment. The plaintiff is a hearing-impaired African-American male who was employed at Gallaudet University ("the defendant"), an educational institution with programs and services specifically designed to accommodate the hearing-impaired. The plaintiff alleges that the defendant subjected him to a hostile work environment, discriminated against him on the basis of his race and disability and retaliated against him, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.* Because the defendant has demonstrated that there is no genuine issue of material fact and that it is entitled to summary judgment, the court grants the defendant's motion.

## II. FACTUAL & PROCEDURAL BACKGROUND

The plaintiff was employed by the defendant for fourteen years, most recently as an Academic Counselor.  Compl. ¶ 8.  In 2004, the plaintiff applied for the position of Career Center Director ("Director").  *Id.* ¶ 13.  Of the fifty-two applicants who applied for the position, the plaintiff was one of thirteen chosen for an interview by the screening committee.  Def.'s Mot. at 13 & Ex. 13.  Of the thirteen chosen for an interview, three were African-American and eight were deaf.  *Id.* at 14 & Ex. 13.  After the screening committee interviewed the thirteen candidates, Steve Koppi, a non-disabled,[1] white male was selected for the position.  Def.'s Statement of Material Facts Not in Genuine Dispute ("Def.'s Statement") ¶¶ 32-34; Compl. ¶ 15.

The Director is responsible for assisting students in preparing for future employment or advanced studies, leading the efforts to offer on-campus employment and internships, educating and counseling students regarding career choices, developing relationships with potential employers and facilitating job placement after graduation.  Def.'s Mot., Ex. 7.  The Director also supervises seven professional staff members and manages the Career Center budget.  *Id.*  The job listing for the Director position set forth the following requirements for the position:

> Master's degree plus three years progressively responsible experience in counseling, student affairs, human development, guidance, or a closely related field.  Two years demonstrated competency in a management/supervisory/coordination capacity.  Working knowledge of educational, psychological, social, cultural and vocational aspects of deafness.  Knowledge of career and general student development theory at the post-secondary educational level.  Experience in program development.  Demonstrated ability to collect, organize, synthesize, analyze and present information clearly.  Excellent communication skills.  Willingness to become fluent in American Sign Language.

*Id.*

---

[1]    Hearing impairment constitutes a disability within the meaning of the ADA.  *See* 42 U.S.C. § 12102(2)(A); *see also Adeyami v. Dist. of Columbia*,  2007 WL 1020754, at *13 (D.D.C. Mar. 31, 2007) (explaining that "[permanent] [h]earing . . . loss fits the definition of 'disability' under the ADA") (internal citations omitted).

At the time of the interview, the plaintiff was enrolled in the doctoral program in Special Education Administration and Supervision at Gallaudet University. Pl.'s Opp'n at 3; Def.'s Mot., Ex. 19 at 0367 (Pl.'s Resume). Koppi, the selected candidate, had a Master's Degree in College Student Personnel from the University of Maryland. Def.'s Mot., Ex. 19 at 0407 (Koppi Resume). As part of the interview, each candidate had to present a vision plan for the Career Center. *Id.* at 15. The screening committee members noted that the plaintiff's presentation, which primarily focused on student enrollment and attrition, was weak and did not address the concerns of the Career Center. *Id.*, Ex. 21. In its hiring recommendation, the committee wrote that the plaintiff gave "weak responses" in his interview and had a "negative attitude." *Id.*, Ex. 13. The committee ranked the plaintiff the lowest of the thirteen interviewed candidates, *id.* at 14 & Ex. 13, and unanimously chose not to hire the plaintiff, stating that "he demonstrated limited knowledge and skills related to career development in a higher education setting, and his performance in his interview reflected his inexperience in the field." *Id.*, Ex. 14 ("Palmer Aff.") ¶ 9; *see also id.*, Ex. 15 ("Moore Aff.") ¶ 9; *id.*, Ex. 16 ("Cook Aff.") ¶ 9.

Koppi, the selected candidate, had a Master's Degree in College Student Personnel from the University of Maryland. Def.'s Mot., Ex. 19 at 0407 (Koppi Resume). The committee ranked Koppi first out of the thirteen interviewed candidates, observing that he was "[h]ighly organized . . . [and had] [e]xcellent experience in career development and administration at [the] postsecondary level[,] . . . [e]xcellent, thorough, up-to-date knowledge of career development theory and practice [and] . . . [s]trong management and budget experience." *Id.*, Ex. 13.

On February 6, 2005, the plaintiff filed a complaint with the D.C. Office of Human Rights ("DCOHR") and the Equal Employment Opportunity Commission ("EEOC") alleging

that the defendant had discriminated against him on the basis of his race and disability.[2] *Id.*, Ex. 1 ("Pl.'s EEOC Charge"). The plaintiff also alleged retaliation, noting that in 1998 he had filed an internal race discrimination complaint. *Id.* On August 18, 2005, the DCOHR concluded that there was "no probable cause" to believe the defendant had for retaliated or discriminated against the plaintiff on the basis of his race or disability. *Id.*, Ex. 2. On November 23, 2005, the EEOC adopted the findings of the DCOHR and issued the plaintiff a Dismissal and Notice of Rights letter ("the right-to-sue letter"). *Id.*, Ex. 3. In his complaint, the plaintiff alleges that he received the right-to-sue letter on December 1, 2005, Compl. ¶ 5; however, he later failed to respond to an interrogatory asking for the specific date on which he received the letter, Def.'s Mot., Ex. 4 ("Pl.'s Resp. to Def.'s Interrog. No. 16"). In a subsequent letter to the defendant dated April 13, 2007, the plaintiff stated he received the right-to-sue letter on December 2, 2005. *Id.*, Ex. 5.

On February 27, 2006, the plaintiff commenced this action. *See generally* Compl. The plaintiff alleges that the defendant intentionally discriminated against him on the basis of his race and disability and retaliated against him in violation of Title VII and the ADA. *See generally id.* The allegedly discriminatory actions include delaying the plaintiff's employment advancement, failing to award the plaintiff the Director position and condoning retaliatory and hostile behavior directed against the plaintiff after he sought employment advancement. *Id.* ¶¶ 9, 15, 17. On August 20, 2007, the defendant filed this motion for summary judgment, arguing that the plaintiff did not commence his lawsuit in a timely manner, failed to exhaust his administrative remedies with respect to his hostile work environment claim, failed to allege any hostile conduct as a matter of law and failed to allege any facts in support of his claim of retaliation. *See generally* Def.'s Mot. The parties then engaged in mediation, which was ultimately unfruitful.

---

[2]     The plaintiff's complaint includes an additional allegation of discrimination on the basis of his gender, but the plaintiff explained during his deposition that he was no longer pursuing that claim. Def.'s Mot., Ex. 6 ("Pl.'s Dep.") at 24.

*See, e.g.*, Minute Order (Sept. 26, 2007); Minute Order (Oct. 3, 2007). The motion has been fully briefed, and the court now turns to the applicable legal standards and the parties' arguments.

## III. ANALYSIS

### A. Legal Standard for a Motion for Summary Judgment

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995). To determine which facts are "material," a court must look to the substantive law on which each claim rests. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248.

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252. To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment. *Id.*

The nonmoving party may defeat summary judgment through factual representations made in a sworn affidavit if he "support[s] his allegations . . . with facts in the record," *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999) (quoting *Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993)), or provides "direct testimonial evidence," *Arrington v. United States*, 473 F.3d 329, 338 (D.C. Cir. 2006). Indeed, for the court to accept anything less "would defeat the central purpose of the summary judgment device, which is to weed out those cases insufficiently meritorious to warrant the expense of a jury trial." *Greene*, 164 F.3d at 675.

Finally, the D.C. Circuit has directed that because it is difficult for a plaintiff to establish proof of discrimination, the court should view summary judgment motions in such cases with special caution. *See Aka v. Wash. Hosp. Ctr.,* 116 F.3d 876, 879-80 (D.C. Cir.1997), *overturned on other grounds*, 156 F.3d 1284 (D.C. Cir.1998) (en banc); *see also Johnson v. Digital Equip. Corp.,* 836 F.Supp. 14, 18 (D.D.C. 1993).

## B. Timeliness of the Plaintiff's Complaint

### 1. Legal Standard for Timeliness

A plaintiff aggrieved under Title VII or the ADA must commence a civil action within ninety days after receipt of a right-to-sue letter from the EEOC. 42 U.S.C. §§ 2000e-5(f)(1), 12117(a); *Hogue v. Roach,* 967 F. Supp. 7, 8 (D.D.C. 1997). Absent evidence indicating otherwise, the right-to-sue letter is presumed to have been mailed on the date of its issuance. *Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 148 (1984). When the receipt date of the right-to-sue letter is unknown or in dispute, Federal Rule of Civil Procedure 6(d) creates a presumption that the letter was received three days after it was mailed, which includes intervening Saturdays, Sundays and holidays ("the three-day rule"). *Id.* at 148 n.1 (applying the three-day rule to Title VII cases); accord *Howard v. Fenty*, 580 F. Supp. 2d 86, 91 (D.D.C.

2008); *see also Lozano v. Ashcroft*, 258 F.3d 1160, 1164 (10th Cir. 2001) (concluding that "a presumption of receipt is appropriate whenever the actual receipt date is unknown or disputed").

For the purposes of computing the ninety-day period within which the suit must be filed, the court begins counting the day after the right-to-sue letter was received. FED. R. CIV. P. 6(a)(1) (directing courts to "exclude the day of the event that triggers [the ninety-day countdown]." When the ninetieth calendar day is a Saturday, Sunday or legal holiday, the ninety-day period does not expire until the end of the next day which is not a Saturday, Sunday or legal holiday. *Id.* 6(a)(1)(C).

### 2. The Plaintiff's Action Was Timely

In its motion for summary judgment, the defendant argues that the plaintiff's complaint is untimely and thus barred because the three-day rule applies and the action was filed ninety-three days after the plaintiff received the right-to-sue letter from the EEOC.[3] Def.'s Mot. at 4-5. In response, the plaintiff claims that he received the right-to-sue notice on December 2, 2005, that the three-day rule thus does not apply and that the action is timely. Pl.'s Opp'n at 6.

The court has no need to resolve this dispute; for, whether the plaintiff received the right-to-sue letter on December 2, 2005 or the court applies the three-day rule, the plaintiff's action is still timely. If the plaintiff received the right-to-sue letter on December 2, 2005, see Def.'s Mot., Ex. 5, the ninety-day period would have elapsed on March 2, 2006, three days after the plaintiff filed his complaint. And if the court instead applies the three-day rule, then the plaintiff presumptively received the right-to-sue letter on Saturday, November 26, 2005, see id., Ex. 3; FED. R. CIV. P. 6(a), and the ninety-day time period did not begin to run until Sunday, November 27, 2005. *See id.* 6(a)(1). Ninety days from November 27, 2005 is Saturday, February 25, 2006;

---

[3]     The defendant reaches this result by calculating that the plaintiff filed his complaint ninety-six days after the EEOC issued its right-to-sue letter and subtracting three days. *See* Def.'s Mot. at 2.

accordingly, the time period did not expire until Monday, February 27, 2006, *see id.* 6(a)(1)(C), the day the plaintiff commenced this action. Under either calculation, therefore, the plaintiff's action is timely.

### C. The Plaintiff's Hostile Work Environment Claim

#### 1. Legal Standard for Exhaustion of Administrative Remedies

In actions brought under Title VII, a court has authority over only those claims that are (1) contained in the plaintiff's administrative complaint or claims "like or reasonably related to" those claims in the administrative complaint and (2) claims for which the plaintiff exhausted administrative remedies. *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995); *Caldwell v. Serv. Master Corp.*, 966 F. Supp. 33, 49 (D.D.C. 1997). It is the defendant's burden to prove by a preponderance of the evidence that the plaintiff failed to exhaust administrative remedies. *Brown v. Marsh*, 777 F.2d 8, 13 (D.C. Cir. 1985) (stating that "because untimely exhaustion of administrative remedies is an affirmative defense, the defendant bears the burden of pleading and proving it"). Meager, conclusory allegations that the plaintiff failed to exhaust his administrative remedies will not satisfy the defendant's burden. *Id.* at 12 (noting that a mere assertion of failure to exhaust administrative remedies without more is "clearly inadequate under prevailing regulations to establish a failure to exhaust administrative remedies").

Dismissal results when a plaintiff fails to exhaust administrative remedies. *Gillet v. King*, 931 F. Supp. 9, 12-13 (D.D.C. 1996) (dismissing the plaintiff's Title VII claim because he failed to exhaust his administrative remedies).

#### 2. The Court Grants Summary Judgment to the Defendant on the Plaintiff's Hostile Work Environment Claim

The defendant argues that the plaintiff's hostile work environment claim should be dismissed because the plaintiff failed to exhaust his administrative remedies. Def.'s Mot. at 10-

12.  The plaintiff, in response, simply states, "Plaintiff raised the issue of hostile work environment . . . in his administrative charge," and cites his deposition transcript.  Pl.'s Opp'n at 13.

As an initial matter, the court notes that the plaintiff did not specifically make a hostile work environment allegation before the EEOC.  *See generally* Pl.'s EEOC Charge.  In fact, the only conduct discussed or referenced in the plaintiff's EEOC Charge is his non-selection for the Director position.  *See generally id.*  Nevertheless, the exhaustion of administrative remedies requirement is less stringent for hostile work environment claims than for discrete claims of discrimination or retaliation. *See Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 122 (2002) (concluding "that a Title VII plaintiff raising claims of discrete discriminatory or retaliatory acts must file his charge within the appropriate time . . . however, [a hostile work environment claim] will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period"); *see also Nurriddin v. Goldin,* 382 F. Supp. 2d 79, 107 n.10 (D.D.C. 2005) (recognizing that "[u]nlike discrete claims of discrimination and retaliation, the exhaustion requirement on a hostile work environment claim is less stringent . . . [and the p]laintiff need only have filed an EEO complaint alleging some of the claims that comprise the hostile work environment claim").  A plaintiff may adequately exhaust administrative remedies without specifically alleging a hostile work environment claim in his formal EEO complaint so long as the hostile work environment claim is "like or reasonably related to the allegations . . . [in the formal EEO complaint] and grows out of such allegations." *Roberson v. Snow,* 404 F. Supp. 2d 79, 96 (D.D.C. 2005) (citing *Jones v. Billington,* 12 F. Supp. 2d 1, 7 (D.D.C. 1997)); *accord Na'im v. Rice*, 577 F. Supp. 2d 361, 369-70 (D.D.C. 2008).

In support of his hostile work environment claim the plaintiff claims that

> [t]he hostile environment is the director not speaking to you, just walking past you, he [sic] relaying messages through a third-party, me practically keeping my office door closed because, you know, there's just that tension that come [sic] up when he passes through[;] so that's the type of hostile environment that I'm in.

Pl.'s Opp'n at 13 (quoting Pl.'s Dep. at 33). The plaintiff also proffers that when he attempted to take classes for his doctoral program that conflicted with his work schedule, he had to take annual leave or find weekend classes while other employees were allowed to take evening classes. *Id*. Additionally, the plaintiff cites an instance during an administrative restructuring when he was allegedly demoted. *Id.* at 14. As a result, in order for the plaintiff to enjoy commensurate status and pay to the position he held prior to the restructuring, he had to apply for other positions. *Id.* He alleges he was the "only minority out of approximately 13 staff from that particular department who applied for various jobs" and did not get a job from those interviews. *Id.* Lastly, the plaintiff states that another of the defendant's employees sent out a memo to the African-American faculty "requesting an assembly to discuss the discrimination pattern on within [sic] the institution," but that the assembly never occurred because that employee was reprimanded. *Id.* Beyond these descriptions of the defendant's allegedly hostile conduct, the plaintiff fails to cite any legal authority to support his contention that he adequately exhausted his administrative remedies. *See id*. at 13-15.

Although the standard for exhaustion of a hostile work environment claim is "less stringent" than that for discrete acts of discrimination or retaliation, *Nurriddin*, 382 F. Supp. 2d at 107 n.10, the plaintiff has nonetheless failed to meet this lower threshold. The plaintiff's EEOC Charge alleges one discrete act of discrimination – that the plaintiff was not hired for the Director position. *See generally* Pl.'s EEOC Charge. The plaintiff does not rely on this non-selection in support of his hostile work environment claim, *see* Pl.'s Opp'n at 13-15, and he does

not allege – or even allude to – any of the facts upon which he does rely in his EEOC Charge, *see generally* Pl.'s EEOC Charge. That is, the plaintiff's EEOC Charge is solely devoted to his allegation of discrimination based on his non-selection for the Director position. *See generally id*. In the EEOC Charge, the plaintiff does not address or even reference any events occurring before or after he applied, interviewed and was not selected for that job and, despite the fact that the charge form allows for the plaintiff to list a date range for the allegedly discriminatory conduct, the plaintiff specifically lists the only relevant date as August 1, 2004, the first day of the month in which the plaintiff learned he was not selected for the Director position. *Id*. at 1. The plaintiff has, thus, failed to demonstrate that his hostile work environment claim is "like or reasonably related to" the allegation in his EEOC Charge. *See Hodge v. United Airlines*, 666 F. Supp. 2d 14, 22 (D.D.C. 2009) (determining that the plaintiff had not exhausted his administrative remedies where "[t]he only possible reference to a hostile work environment [in the administrative charge] could be [the plaintiff's] indication that he 'wrote a letter of harassment' [sic] to headquarters, but this information is not specific or elaborate enough to allow the EEOC to infer the existence of a hostile work environment"); *Pearsall v. Holder*, 610 F. Supp. 2d 87, 98 (D.D.C. 2009) (dismissing the plaintiff's hostile work environment claim because he failed to argue it at the administrative level); *Park*, 71 F.3d at 907-08 (holding that the plaintiff had not exhausted her administrative remedies because her EEOC charge "did not express or even hint at a . . . hostile work environment claim"). Because the plaintiff has not exhausted his administrative remedies with respect to his hostile work environment claim, the court grants summary judgment to the defendant on that claim.

### D. The Plaintiff's Discrimination Claims

### 1. Legal Standard for Discrimination

When the defendant in a Title VII or the ADA[4] case presents a legitimate, non-discriminatory reason for its actions,[5] the district court need resolve only one question to adjudicate a motion for summary judgment: "Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of race, color, religion, sex, or national origin?" *Brady v. Office of the Sergeant at Arms, U.S. House of Representatives*, 520 F.3d 490, 494 (D.C. Cir. 2008); *Adeyemi v. Dist. of Columbia*, 525 F.3d 1222, 1226 (D.C. Cir. 2008) (applying the *Brady* rationale to ADA cases). The court must consider whether the jury could infer discrimination from (1) the plaintiff's prima facie case, (2) any evidence the plaintiff presents to attack the employer's proffered explanation, and (3) any further evidence of discrimination that may be available to the plaintiff. *Waterhouse v. District of Columbia*, 298 F.3d 989, 992-93 (D.C. Cir. 2002) (quoting *Aka v. Wash. Hosp. Ctr.*,

---

[4]     The ADA prohibits employers from discriminating against a "qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The ADA defines disability in relevant part as "a physical or mental impairment that substantially limits one or more [of a person's] major life activities." *Id.* § 12102(2)(A). Congress, however, specifically limited the ADA's protections to those qualified individuals with a disability who, "with or without reasonable accommodation, can perform the essential functions of the positions they hold." *Id.* § 12111(8). The ADA provides that consideration be given to the employer's judgment in determining what functions are essential. *See id.*

[5]     In those rare cases in which the defendant fails to present a legitimate, non-discriminatory reason for its actions, the court must follow a three-part burden-shifting analysis known as the *McDonnell Douglas* framework. *Lathram v. Snow*, 336 F.3d 1085, 1088 (D.C. Cir. 2003) (noting that once the defendant presents a legitimate non-discriminatory reason "the *McDonnell Douglas* framework . . . disappears, and the sole remaining issue is discrimination *vel non*") (citing *McDonnell Douglas v. Green*, 411 U.S. 792, 802-05 (1973)); *see also Brady*, 520 F.3d at 494 (explaining that "the prima facie case is a largely unnecessary sideshow").

156 F.3d 1284, 1291 (D.C. Cir. 1998)). The plaintiff need not present evidence in each of these categories to avoid summary judgment. *Aka*, 156 F.3d at 1289. Rather, the court should assess the plaintiff's challenge to the employer's explanation in light of the total circumstances of the case. *Id.* at 1291.

### 2. The Court Grants Summary Judgment to the Defendant on the Plaintiff's Race Discrimination Claim

The plaintiff alleges that the defendant discriminated against him based on his race[6] by hiring Koppi, a less-qualified white male, for the Director position. Compl. ¶ 17-18; Pl's Statement of Material Facts in Dispute ¶ I. First, the plaintiff notes he was enrolled in a doctoral program for Special Education Administration and Supervision at the time of the hiring, Def.'s Mot., Ex. 19 at 0367 (Pl.'s Resume), while Koppi possessed only a Master's Degree in College Student Personnel, *id.* at 0407 (Koppi Resume). The plaintiff contends that, unlike him, the other candidates "did not have experience at the university level . . . did not have an employment background in employment services . . . did not work with individuals with disabilities in employment . . . [and] did not have administrative experiences." Pl.'s Dep. at 80. The defendant responds that six other candidates including Koppi possessed those qualifications, and that it chose Koppi over the plaintiff because Koppi was the most qualified candidate for the job. Def.'s Mot. at 13-14.

The screening committee noted in its hiring recommendation that the plaintiff gave "weak responses" in his interview and had a "negative attitude." *Id.*, Ex. 13. In addition, it critiqued the plaintiff's presentation as not relevant to the issues faced by the Career Center. *Id.*, Ex. 21. The committee ranked the plaintiff the last of the thirteen interviewed candidates, *id.*, Ex. 13, and unanimously chose not to hire the plaintiff because "he demonstrated limited

---

[6]     The plaintiff previously withdrew his claim of gender discrimination. *See supra* n.2.

knowledge and skills related to career development in a higher education setting, and his performance in his interview reflected his inexperience in the field.  Palmer Aff. ¶ 9; *see also* Moore Aff. ¶ 9; Cook Aff. ¶ 9.

In contrast, the committee ranked Koppi first out of the thirteen interviewed candidates and selected him for the job because he was "[h]ighly organized . . . [and had] [e]xcellent experience in career development and administration at [the] postsecondary level . . . [e]xcellent, thorough, up-to-date knowledge of career development theory and practice[, and] . . . [s]trong management and budget experience."  Def.'s Mot., Ex. 13.

Because the defendant has asserted a legitimate, nondiscriminatory reason for why the plaintiff was not selected for the job, namely that the plaintiff was not the most qualified candidate, the court turns to the central matter in dispute: whether the plaintiff has produced sufficient evidence for a reasonable jury to conclude the defendant's asserted nondiscriminatory reason for the personnel action was a pretext for discrimination.  *See Brady*, 520 F.3d at 494.  To show pretext, the plaintiff must demonstrate "*both* that the reason was false, *and that* discrimination . . . was the real reason*." Weber*, 494 F.3d at 186 (quoting *Hicks*, 509 U.S. at 515); *see also Houston v. Sectek, Inc.*, 2010 WL 322251, at *5 (D.D.C. Jan. 28, 2010) (concluding that even if the defendant's asserted justification for reassigning an African-American employee's job responsibilities to another employee was pretext, the defendant was entitled to summary judgment because the plaintiff offered insufficient evidence from which a reasonably jury could infer that the true motivation for the plaintiff's actions was racial discrimination).

To begin, the court notes that even though the plaintiff was in a Ph.D. program at the time of the interview, Mot., Ex. 19 at 0367 (Pl.'s Resume), and Koppi only had a Master's degree, *id.*

at 0407 (Koppi Resume), the job only required a Master's degree, Def.'s Mot., Ex. 7.

Furthermore, although, the plaintiff asserts that he was more qualified than Koppi and the other

candidates, he offers nothing beyond his own deposition testimony to substantiate that assertion.

Pl.'s Opp'n at 8-12. Without more, the plaintiff has not produced evidence sufficient to establish

pretext. *See Hastie v. Henderson*, 121 F. Supp. 2d 72, 81 (D.D.C. 2000) (determining that there

was no genuine issue of material fact because the plaintiff provided no evidence "other than her

own self-serving and conclusory statement" that she completed more work than her co-worker to

show that the reason her employer gave her a lower performance rating was pretext); *Waterhouse

v. Dist. of Columbia*, 124 F. Supp. 2d 1, 7 (D.D.C. 2000), *abrogated on other grounds by Mastro

v. Potomac Elec. Power Co.*, 447 F.3d 843, 851 (D.C. Cir. 2006) (holding that the plaintiff

cannot establish pretext based on her self-serving affidavit and own subjective assessment that

she was qualified for the position).

The plaintiff also alleges that the defendant has an "institutionalized practice of

discriminating against qualified minorities" because he applied for and was denied nine different

positions at Gallaudet over the course of fourteen years working there, each of which was

supposedly filled by less qualified white applicants. Pl.'s Opp'n at 7-8. He does not, however,

offer any details regarding the previous positions to which he applied or the people hired to fill

those positions. *See* Pl.'s Opp'n at 8-12; s*ee also* Pl.'s Dep. at 26-27, 60-61. As such, the

plaintiff has not proffered sufficient evidence to raise a genuine issue of material fact regarding

the defendant's reasons for not hiring him. *See Banks v. Dist. of Columbia*, 498 F. Supp. 2d 228,

235 (D.D.C. 2007) (holding that the plaintiff failed to establish an inference of discrimination

based on comparing herself to similarly situated employees because she could not specifically

name any such employee); *Vasilevsky v. Reno*, 31 F. Supp. 2d 143, 150 (D.D.C. 1998) (holding

that the "plaintiff's opinion of the relative merits of her credentials as opposed to those of selected individuals is irrelevant").  Accordingly, the court grants the defendant's motion for summary judgment on the plaintiff's race discrimination claim.

### 3.  The Court Grants Summary Judgment to the Defendant on the Plaintiff's Disability Discrimination Claim

The plaintiff alleges that the defendant failed to select him for the Director position because of his hearing impairment.  Compl. ¶ 27.  Koppi, who was hired for the position, has no such disability.  *Id.*  The defendant contends that the plaintiff was not hired for the position because he was not the most qualified candidate for the job.  *Id.* at 13.

Because the defendant has asserted a legitimate, nondiscriminatory justification for the challenged personnel action as described above, the court forgoes an examination of the plaintiff's prima facie case and turns directly to whether the plaintiff has produced sufficient evidence for a reasonable jury to conclude that the defendant's asserted nondiscriminatory reason for hiring Koppi was a pretext for discrimination.  *See Aka*, 156 F.3d at 1288.

Although the plaintiff contends that Koppi is actually less qualified for the Director position because he lacked sign language skills, Pl.'s Opp'n at 3, the position only required candidates to have a "willingness to become fluent in American Sign Language," Def.'s Mot., Ex. 7, which Koppi demonstrated according to the screening committee, *see* Palmer Aff. ¶ 9; Moore Aff. ¶ 9; Cook Aff. ¶ 9.  The plaintiff asserts that the defendant engages in institutionalized discrimination against individuals with hearing impairments because it "denied the plaintiff numerous job advancement opportunities," Pl.'s Opp'n at 7; but these allegations are generalized, conclusory and uncorroborated by any evidence other than the plaintiff's own deposition testimony, which is insufficient to establish a triable issue of fact as to pretext.  *See supra* Part III.D.2; *Waterhouse*, 124 F. Supp. 2d at 7.  Again, the plaintiff does not provide any

specific information regarding the jobs he has been denied or who filled those positions, as needed for the court to determine if the defendant's non-discriminatory reason was pretext. *See Banks*, 498 F. Supp. 2d at 235 (holding that the plaintiff failed to establish an inference of discrimination based on comparing herself to similarly situated employees because she could not specifically name any such employee). Consequently, the court grants summary judgment to the defendant on the plaintiff's ADA claim.

### F. The Plaintiff's Retaliation Claim

#### 1. Legal Standard for Retaliation

To prevail on a claim of retaliation, a plaintiff must follow the *McDonnell Douglas* framework.[7] *Taylor v. Solis*, 571 F.3d 1313, 1320 n.* (D.C. Cir. 2009) (observing that "[r]etaliation claims based upon circumstantial evidence are governed by the three-step test of *McDonnell Douglas Corp. v. Green*"); *Morgan v. Fed. Home Loan Mortgage Corp.*, 328 F.3d 647, 651 (D.C. Cir. 2003) (applying the *McDonnell Douglas* framework to a Title VII retaliation claim).

To establish a prima facie case of retaliation, a plaintiff must show that (1) he engaged in a statutorily protected activity, (2) a reasonable employee would have found the challenged action materially adverse,[8] and (3) there existed a causal connection between the protected activity and the materially adverse action. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67-69 (2006); *Jones v. Bernanke*, 557 F.3d 670, 677 (D.C. Cir. 2009). The plaintiff's burden

---

[7]     *See supra* Part III.D.1.

[8]     In the retaliation context, the term "adverse action" "encompass[es] a broader sweep of actions than those in a pure discrimination claim." *Baloch v. Kempthorne*, 550 F.3d 1191, 1198 n.4 (D.C. Cir. 2008). Thus, "[r]etaliation claims are 'not limited to discriminatory actions that affect the terms and conditions of employment' and may extend to harms that are not workplace-related or employment-related so long as 'a reasonable employee would have found the challenged action materially adverse.'" *Id.* (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 64, 68 (2006)).

is not great: he "need only establish facts adequate to permit an inference of retaliatory motive." *Forman v. Small*, 271 F.3d 285, 299 (D.C. Cir. 2001).

As with discrimination claims, if the employer successfully presents a legitimate, non-retaliatory reason for its actions, "the presumption raised by the prima facie is rebutted and drops from the case." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993) (internal citation omitted); *Brady*, 520 F.3d at 494 (noting that "the prima facie case is a largely unnecessary sideshow").

The strength of the plaintiff's prima facie case, especially the existence of a causal connection, can be a significant factor in his attempt to rebut the defendant's legitimate non-retaliatory reason for the adverse action. *See Aka*, 156 F.3d at 1289 n.4 (stating that "a *prima facie* case that strongly suggests intentional discrimination may be enough by itself to survive summary judgment"); *Laurent v. Bureau of Rehab., Inc.*, 544 F. Supp. 2d 17, 23 n.5 (D.D.C. 2008) (holding that the plaintiff cannot establish pretext because "she is unable to show any causal connection"); *Meadows v. Mukasey*, 2008 WL 2211434, at *5-6 (D.D.C. May 29, 2008) (holding that the plaintiff demonstrated pretext in part by establishing a causal connection). The plaintiff may establish a causal connection "by showing that the employer had knowledge of the employee's protected activity, and that the [retaliatory] personnel action took place shortly after that activity." *Cones v. Shalala*, 199 F.3d 512, 521 (D.C. Cir. 2000) (quoting *Mitchell v. Baldrige*, 759 F.2d 80, 86 (D.C. Cir. 1985)).

## 2. The Court Grants Summary Judgment to the Defendant
## on the Plaintiff's Retaliation Claim

The plaintiff alleges that the defendant's failure to select him for the Director position was an act of retaliation against him because of "his prior complaints of discrimination."[9] Pl.'s Opp'n at 15. The plaintiff also believes that he was retaliated against by screening committee member Palmer for not "kowtowing to his title." Pl.'s Dep. at 47-50. Lastly, the plaintiff claims that his e-mail account was deleted "around the time" of his first discrimination complaint against the university. *Id.* at 153.

The defendant argues that the plaintiff has not established a prima facie case of retaliation. Def.'s Mot. at 16-17. Specifically, the defendant argues that the plaintiff's alleged failure to "kowtow" to Palmer does not constitute "protected activity" as a matter of law, *id.* at 16, and contends that the deletion of the plaintiff's e-mail account is inconsequential because it does not constitute an adverse action, *id.* Furthermore, the defendant argues there is no evidence of a causal link between its decision not to hire the plaintiff for the Director position and the plaintiff's protected conduct. *Id.* at 16-17.

The plaintiff's failure to "kowtow" to Palmer does not constitute protected activity because there is no evidence that such behavior was in protest of an unlawful employment practice by the defendant. 42 U.S.C. 2000e-3(a); *see also Jones v. Billington,* 12 F. Supp. 2d 1, 13 (D.D.C. 1997), (stating that retaliation must be "based on the fact that an employee has opposed any practice that is an unlawful employment practice, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing") (internal citations omitted) *aff'd without op.*, 1998 WL 389101 (D.C. Cir. June 30, 1998). The

---

[9]     In his administrative charge, the plaintiff did not check off the box available for "retaliation;" however, the DCOHR and the EEOC investigated and ruled on this claim. *See* Def.'s Mot., Exs. 1 & 2.

only specific protected activity alleged by the plaintiff was the internal discrimination complaint he filed in 1998.[10]  *See Paquin v. Fed. Nat'l Mortgage Ass'n*, 119 F.3d 23, 31 (D.C. Cir. 1997) (holding that letters to employers protesting discrimination constitute protected activity). Although the plaintiff also references other "prior complaints of discrimination," he does not provide any further information beyond that (*e.g.*, when he made the complaints, to whom they were sent, or the subject matter of the complaints).  *See generally* Pl.'s Opp'n.

Additionally, the deletion of the plaintiff's e-mail account does not constitute a materially adverse action.  *See Walker v. Wash. Metro. Area Transit Auth.*, 102 F. Supp. 2d 24, 29 (D.D.C. 2000) (holding that an "employment decision does not rise to the level of an actionable adverse action . . . unless there is a tangible change in the duties or working conditions constituting a material employment disadvantage"); *Jones v. Billington,* 12 F. Supp. 2d at 13 (noting that "not everything that makes an employee unhappy is an actionable adverse action") (citation and quotation marks omitted).  The court notes that it was the plaintiff's *school* e-mail account that was deleted, and that the plaintiff makes no allegation that the deletion of this e-mail account had a materially adverse effect on him in any way.  *See* Pl.'s Dep. at 152-53; *see also generally* Pl.'s Mot.  A failure to present evidence to support the elements of a claim is a basis for the granting of summary judgment.  *Celotex,* 477 U.S. at 322.  Accordingly, because the plaintiff has not satisfied the elements of a prima facie case of retaliation, the defendant is entitled to summary judgment on that claim.

---

[10]      The plaintiff's February 2005 complaint to the DCOHR and the EEOC cannot be a basis for the plaintiff's retaliation claim because all of the acts of retaliation complained of by the plaintiff occurred prior to that date.  *See* Pl.'s Opp'n to Def.'s Mot. for Summ J. at 15; Def.'s Mot., Ex. 6 ("Pl.'s Dep.") at 47-53.

## IV.  CONCLUSION

For the foregoing reasons, the court grants the defendant's motion for summary judgment.[11]  An Order consistent with this Memorandum Opinion is separately and contemporaneously issued this 3rd day of August, 2010.


RICARDO M. URBINA
United States District Judge

---

[11]     The court notes that the defendant filed a motion to dismiss for failure to prosecute on October 13, 2009.  *See generally* Def.'s Mot. to Dismiss.  Because the court has adjudicated this case on the merits, the motion is moot.